Forma Merger Analyses), Sandler O'Neill reviewed and considered, among other things, "internal financial projections for RBPI for the year ending December 31, 2017 as well as estimated long-term net income and balance sheet growth rates for the years thereafter, as provided by the senior management of RBPI." However, although the Registration Statement provides certain projections for 2017, it does not provide stockholders with the "estimated long-term net income and balance sheet growth rates for the years thereafter, as provided by the senior management of RBPI."

69.     Further, the Registration Statement fails to provide a reconciliation of all non-GAAP to GAAP financial metrics.

70.     Additionally, the Registration Statement indicates that Sandler O'Neill also performed certain analyses of BMBC (namely, the Net Present Value and Pro Forma Merger Analyses) where Sandler O'Neill used certain "publicly available consensus median analyst earnings per share estimates for the years ending December 31, 2017 and December 31, 2018, as well as an estimated long-term annual earnings per share growth rate for BMBC for the years thereafter, as discussed with and confirmed by the senior management of BMBC and its representatives." The Registration Statement, however, completely fails to disclose any financial projections of BMBC used in Sandler O'Neill's analyses.

71.     *Second*, the Registration Statement fails to disclose material information relating to the financial analyses performed by the Company's financial advisor, Sandler O'Neill, in support of its so-called fairness opinion. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

72.     With respect to Sandler O'Neill's Net Present Value Analysis of RBPI, the Registration Statement fails to disclose Sandler O'Neill's basis for selecting price-to-2021 earnings per share multiples ranging from 13.0x to 18.0x and price-to-December 31, 2021 tangible book value per share multiples ranging from 110% to 160% to derive the Company's terminal values.  Further, although the Registration Statement discloses that Sandler O'Neill selected discount rates ranging from 10.0% to 15.0%, which were "chosen to reflect different assumptions regarding required rates of return of holders or prospective buyers of RBPI common stock," the Registration Statement fails to disclose those underlying assumptions and inputs to derive the discount rates.

73.     Similarly, with respect to Sandler O'Neill's Net Present Value Analysis of BMBC, the Registration Statement fails to disclose Sandler O'Neill's basis for selecting price-to-2021 earnings per share multiples ranging from 17.0x to 22.0x and price-to-December 31, 2021 tangible book value per share multiples ranging from 170% to 270% to derive the Company's terminal values.  Further, although the Registration Statement discloses that Sandler O'Neill selected discount rates ranging from 9.0% to 13.0%, which were "chosen to reflect different assumptions regarding required rates of return of holders or prospective buyers of BMBC common stock," the Registration Statement fails to disclose those underlying assumptions and inputs to derive the discount rates.

74.     With respect to Sandler O'Neill's Comparable Company Analyses, the Registration Statement fails to disclose the individual financial metrics for each of the selected companies observed by Sandler O'Neill in its analyses of RBPI and BMBC, respectively.

75.     With respect to Sandler O'Neill's Analysis of Selected Merger Transactions, the Registration Statement fails to disclose the individual financial metrics for each of the selected

transactions observed by Sandler O'Neill in its analyses of the Nationwide Precedent Transactions and Regional Precedent Transactions, respectively.

76.     *Third*, the Registration Statement omits material information regarding potential conflicts of interest of Sandler O'Neill. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

77.     For example, the Registration Statement states that: "Sandler O'Neill provided certain investment banking services to BMBC and received compensation for such services. Most recently, Sandler O'Neill acted as placement agent to BMBC in connection with its offer and sale of $30 million of subordinated notes on August 6, 2015." The Registration Statement, however, fails to disclose the amount of compensation that Sandler O'Neill was paid in connection with that past service. It also fails to disclose what other services Sandler O'Neill provided to BMBC in the past, as well as when Sandler O'Neill performed those services and the compensation earned for those services.

78.     Further, the Registration Statement states that "Sandler O'Neill has advised the RBPI board of directors that it may provide, and receive compensation for, investment banking services to BMBC in the future, including during the pendency of the merger." The Registration Statement fails to provide full disclosure of the nature, timing, and compensation to be earned in connection with any contemplated services that Sandler O'Neill might provide to "BMBC in the future, including during the pendency of the merger."

79.     Further, although the Registration Statement states that RBPI hired Sandler O'Neill, in part, due to its "familiarity with the business and operations of RBPI," the Registration Statement fails to disclose whether Sandler O'Neill has performed any services for

RBPI in the past (and not just the past two years), as well as the compensation earned for those services, if any.

80.    *Fourth*, the Registration Statement fails to disclose material information relating to the background leading to the Proposed Transaction.  Stockholders are entitled to a balanced and truthful recitation of events, not a sanitized version that is materially misleading.

81.    The Registration Statement indicates that, on or about November 15, 2016, BMBC and Company A each submitted written preliminary indications of interest to the Company, but the Registration Statement fails to disclose the terms of those indications of interest.

82.    The Registration Statement states that each of BMBC and Company A executed "standard nondisclosure agreements" in September 2016, but it fails to disclose the terms of those confidentiality agreements, including whether they contained standstill and "don't ask, don't waive" provisions that are preventing Company A from submitting a superior offer to acquire the Company.  Notably, it is likely such provisions do exist because Section 6.10.1 of the Merger Agreement provides that RBPI shall not "release any Person from, waive any provisions of, or fail to enforce any confidentiality agreement or standstill agreement to which RBPI or any of its Subsidiaries is a party."

83.    The Registration Statement indicates that, on November 18, 2016, "RBPI's board first received a presentation from an experienced banking industry consultant and advisor.'  The Registration Statement, however, fails to disclose the identity of that "experienced banking industry consultant and advisor," the reason it was hired, and the amount of compensation it was paid in connection with its engagement.

84.    Similarly, the Registration Statement states that, on January 30, 2017,

representatives of "RBC Capital Markets, LLC, which was also engaged to provide financial advisory services to RBPI in connection with the transaction, also made a presentation at the meeting with respect the proposed merger, but did not provide a fairness opinion." The Registration Statement fails to disclose the reason the Board deemed it necessary to engage RBC as a second financial advisor, including whether it was due to any perceived conflicts of interest. Further, the Registration Statement fails to disclose the nature of RBC's engagement, when it was engaged, and the amount of compensation RBC earned in connection with its engagement. Additionally, the Registration Statement fails to disclose whether RBC has provided any services to RBPI and BMBC in the past, as well as the timing and amount of compensation earned for those services. Finally, the Registration Statement fails to disclose a fair summary of the analyses that RBC performed and presented to the Board.

85.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to RBPI's stockholders.

86.     Accordingly, plaintiff seeks enjoinment of the Proposed Transaction.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Royal Bancshares

87.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

88.     The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Royal Bancshares is liable as the issuer of these statements.

89.     The Registration Statement was prepared, reviewed, and/or disseminated by the

Individual Defendants.   By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

90.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

91.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.   In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

92.     The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

93.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

94.     Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Bryn Mawr

95.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

96.     The Individual Defendants and Bryn Mawr acted as controlling persons of Royal Bancshares within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Royal Bancshares and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements

contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

97.     Each of the Individual Defendants and Bryn Mawr was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

98.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.   The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.   They were thus directly in the making of the Registration Statement.

99.     Bryn Mawr also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

100.    By virtue of the foregoing, the Individual Defendants and Bryn Mawr violated Section 20(a) of the 1934 Act.

101.    As set forth above, the Individual Defendants and Bryn Mawr had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934

Act.   As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.   Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.   In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.   Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.   Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.   Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: April 11, 2017

Respectfully submitted,

Joseph M. Profy

**PROFY PROMISLOFF &
CIARLANTO, P.C**
Joseph M. Profy (ID# 77141)
David M. Promisloff (ID# 200971)
Jeffrey J. Ciarlanto (ID# 205838)
100 N 22nd Street, Unit 105
Philadelphia, PA 19103
Tel: (215) 259-5156
Fax: (215) 600-2642
profy@prolawpa.com
david@prolawpa.com
ciarlanto@prolawpa.com

**RIGRODSKY & LONG, P.A.**
Brian D. Long (PA Bar No. 82370)
Gina M. Serra (PA Bar No. 308207)
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

*Attorneys for Plaintiff*